1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                         **DISTRICT OF NEVADA**
6                                * * *
7   JOSE ENRIQUE ARCE-CERVERA,            Case No. 2:25-cv-01895-RFB-NJK
8                 Petitioner,                        **ORDER**
9          v.
10
11  KRISTI NOEM, *et al.*,
12                Respondents.

13          Before the Court is the (ECF No. 5) Motion for a Temporary Restraining Order ("TRO")

14  by Petitioner Jose Enrique Arce-Cervera. For the following reasons, the Court converts the Motion

15  into a Motion for Preliminary Injunction and grants it.

16          As a preliminary matter, the Court notes that Respondents have failed to file a response by

17  the extended deadline they requested. ECF No. 17. No additional extension has been requested,

18  and Respondents' counsel has not demonstrated good cause for further extensions. While the Court

19  understands that the U.S. Attorney's office is experiencing a heavy workload due to the ongoing

20  federal government shutdown and recent influx of immigration habeas cases, which require

21  expedited briefing, the Court finds they have been provided sufficient notice and opportunity to be

22  heard in this case (3 weeks).[1] Moreover, the Court has heard Respondents' arguments in support

23  of their mandatory detention policy in several similar matters,[2] and leave has been granted to

24
25          [1] See Fed. R. Civ. P. 65.

26          [2] See, e.g., Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev.
    Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev.
27  Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev.
    Sept. 23, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct.
28  14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025).

1    Respondents to incorporate those arguments by reference.

2        The Court finds this matter raises purely legal issues, and there is no need for additional

3    factual information from the relevant agencies. Ultimately, the Court finds the liberty interests of

4    Petitioner outweigh the time and resource constraints of the U.S. Attorney's office, particularly

5    because the increase in workload is due to the government's own new detention policy. This Court

6    and a majority of federal courts across the country have found the policy to be unlawful. See

7    Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025)

8    ("Every district court to address this question has concluded that the government's position belies

9    the statutory text of the INA, canons of statutory interpretation, legislative history, and

10    longstanding agency practice.") (collecting cases).  Lastly, the Court notes that Petitioner is

11    suffering from deteriorating mental health in detention, thus, any further delay would result in

12    extraordinary prejudice to the Petitioner. ECF Nos. 18-19. Accordingly, the Court will rule on the

13    instant Motion without briefing from Respondents.

14

15    **I.    INTRODUCTION**

16        This case presents a challenge to the government's new policy of mandatory detention of

17    all noncitizens charged with entering the United States without inspection during the pendency of

18    their removal proceedings. The instant Petition is one of a growing number of like challenges in

19    this District and across the country. Multiple putative class actions challenging the policy are

20    currently pending before this Court. See Maldonado Vazquez v. Feeley, Case No. 2:25-cv-01542-

21    RFB-EJY; Dominguez-Lara v. Noem, Case No. 2:25-cv-01533-RFB-BNW. The challenged

22    policy subjects millions of noncitizens to mandatory prolonged detention without the opportunity

23    for release on bond, no matter how long they have resided within the country. The policy arises

24    from the recent decision by the Department of Homeland Security (DHS) and the Department of

25    Justice (DOJ) to significantly alter its interpretation of the Government's detention authority

26    during the pendency of removal proceedings under the Immigration and Nationality Act (INA).

27        Specifically, the policy is based on the Government's contention that 8 U.S.C. § 1225(b)(2)

28    subjects all noncitizens present in the U.S. who are charged with being inadmissible under 8 U.S.C.

§ 1182(a)(6)(A)(i) as having entered the country without inspection to mandatory detention, rather than the discretionary detention scheme under 8 U.S.C. § 1226(a), which provides the opportunity for release on bond and an individualized custody redetermination hearing (*i.e.*, bond hearing) before an immigration judge.

On September 5, 2025, the Bureau of Immigration Appeals (BIA) signaled that it has adopted DHS' interpretation of the INA as mandating detention without bond for millions of noncitizens who reside in the U.S. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). The BIA's decision held that immigration judges lack jurisdiction to hold bond hearings or grant bond to all individuals charged with entering the country without inspection. Id. In Maldonado Vazquez, this Court conducted statutory analysis of the relevant provisions of the INA, 8 U.S.C §§ 1225(b)(2) and 1226(a), and found that the Government and BIA's interpretation of the § 1225(b)(2) is both contrary to the plain meaning of the statutory text, legislative history, and decades of agency practice, and raises serious constitutional concerns under the Due Process Clause of the Fifth Amendment. See Maldonado Vazquez v. Feeley, Case No. 2:25-cv-01542-RFB-EJY, 2025 WL 2676082, at *12-23 (D. Nev. Sept. 17, 2025). Accordingly, the Court found the petitioner Maldonado Vazquez was likely to succeed in establishing that § 1226(a) applied to him and other similarly situated noncitizens, and granted him a preliminary injunction, enjoining the federal respondents from denying his release from detention on bond on the basis that he is subject to mandatory detention under § 1225(b)(2). Id. at *23.

This Court is not alone is its finding, as the overwhelming majority of district courts across the country that have considered DHS and the BIA's new statutory interpretation have found it unlawful. See Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.") (collecting cases).

Petitioner in this case is similarly situated to petitioner Maldonado Vazquez, and Respondents' detention of him under 8. U.S. C § 1225(b)(2) is unlawful for the same reasons. As such, the Court's analysis regarding Maldonado Vazquez's entitlement to a preliminary injunction,

which the Court fully incorporates by reference herein, applies with equal force to Petitioner Arce-Cervera's instant Motion for preliminary relief. Because, for the reasons set forth in this Court's decision in <u>Maldonado Vazquez</u>, the Court finds Petitioner will likely succeed in establishing that the Government's authority to detain him arises from 8 U.S.C. § 1226(a), not § 1225(b)(2), and that he is thus entitled to a bond hearing, his continued detention without one is likely unconstitutional, is causing immediate and irreparable harm, and is contrary to the public interest. The Court therefore grants Petitioner's Motion and enjoins Respondents from continuing to deprive him of the opportunity for release on bond on the basis that he is subject to mandatory detention under § 1225(b)(2).

## II.    PROCEDURAL HISTORY

On October 6, 2025, Petitioner Jose Enrique Arce-Cervera, who is currently detained in ICE custody at the Nevada Southern Detention Center (NSDC), filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Kristi Noem, in her official capacity as Secretary of DHS, Pamela Bondi, in her official capacity as Attorney General of the United States, Todd Lyons, in his official capacity as Acting Director of ICE, DHS, Jason Knight, in his official capacity as the Salt Lake City Field Office Director for Detention and Removal, ICE, DHS, and John Mattos, in his official capacity as Warden at Nevada Southern Detention Center. ECF No. 1. Petitioner concurrently filed the instant Motion for TRO. ECF No. 5.

This case was initially assigned to the Honorable Judge Cristina D. Silva, but on October 21, 2025, was transferred to the undersigned judge as related to two pending putative class actions before the undersigned Judge, Case Numbers 2:25-cv-01542-RFB-EJY and 2:25-cv-01553-RFB-BNW. ECF No. 14. On October 7, 2025, this Court ordered counsel for Respondents to file a notice of appearance by October 14, 2025, file and serve their response to the instant motion by October 21, 2025, and file and serve their response to the petition by November 7, 2025. ECF No. 10. Respondents have not filed a notice of appearance to-date but filed a Motion to Extend Time

to Respond on October 21, 2025, seeking an extension to October 22, 2025.[3] ECF No. 15. The Court granted this Motion, *nunc pro tunc*, on October 23, 2025, while noting that Respondents still had not filed a response. ECF No. 17. On October 23, 2025, Petitioner's counsel filed a notice of Respondents' failure to respond, which also provided information as to Petitioner's October 23, 2025, individual hearing before the Immigration Court and his declining mental and emotional state. ECF Nos. 18-19.

### III.    BACKGROUND

The Court fully incorporates by reference the statutory and regulatory background relevant to the Government's challenged mandatory detention policy set forth in its ruling in Maldonado Vazquez, 2025 WL 2676082, at *6-11. The key factual and procedural distinction in this case is that Mr. Maldonado Vazquez requested and was granted a bond hearing and release on bond by a Las Vegas IJ before the BIA's decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). When the Court granted a preliminary injunction, Mr. Maldonado Vazquez remained in ICE detention based on the same detention policy that Petitioner Arce-Cervera challenges in this case, however, in Maldonado Vazquez, DHS continued to detain him pursuant to an automatic stay of the IJ's bond release order pending its appeal to the BIA, under 8 C.F.R. § 1003.19(i)(1). In contrast, Petitioner Arce-Cervera did not seek a custody redetermination (*i.e.* bond hearing) prior to the BIA's ruling, which adopted DHS' reading of the INA and held IJs have no jurisdiction to hold a bond hearing for detained noncitizens like Mr. Maldonado Vazquez and Mr. Arce-Cervera, but sought a bond hearing after said ruling was issued. The IJ denied his request on September 15, 2025, concluding that he lacked jurisdiction to consider bond under Hurtado. Accordingly, the automatic stay under 8 C.F.R. § 1003.19(i)(1) is not at issue here, and the habeas relief requested is different.

---

[3] Respondents specified, in their Motion to Extend Time, their position that Petitioner would not be prejudiced as the sought extension would delay proceedings by "a few hours, at the most." ECF No. 15. Petitioner has been detained with deteriorating mental health for over 72 hours since this filing by Respondents, and this Court agrees with Petitioner that "*[e]ach day* of detention . . . constitutes irreparable harm, stripping [Petitioner] of his liberty and imposing . . . burdens on [Petitioner's] U.S. citizen fiancée, family members, and broader community." ECF No. 5 (emphasis added).

1    Rather than ordering Petitioner's release on bond, as the Court did in <u>Maldonado Vazquez</u>,

2    the Court here orders Respondents to provide Petitioner a bond hearing, wherein an IJ may or may

3    not find Petitioner should be released on bond based on the evidence of Petitioner's individual

4    circumstances and whether he presents a flight risk or danger to national security or the

5    community. <u>See</u> <u>Matter of Guerra</u>, 24 I&N Dec. 37, 40 (BIA 2006) (in a custody redetermination

6    hearing, a noncitizen must establish to the satisfaction of the IJ that he or she does not present a

7    danger to others, a threat to the national security, or a flight risk, to obtain release on bond).

8    Findings of fact relevant to Petitioner's individual circumstances for the purpose of this Motion

9    are set forth below.

10    The Court makes the following findings of fact relevant to Petitioner. Petitioner is a 28-

11    year-old noncitizen who entered the U.S. without inspection, as a child, in or around April 2008.

12    Since then, he has continuously resided in the country for over seventeen years without departure.

13    Petitioner has deep and lasting ties to the Las Vegas, Nevada community where he resides.

14    Petitioner attended elementary school, middle school, and earned his GED in the Las Vegas area.

15    Since completing his education, Petitioner has attained a real estate license and held stable

16    employment in the real estate industry here in Las Vegas. Petitioner is currently engaged to a U.S.

17    citizen; the couple has been in a committed relationship for two years, and they are actively

18    planning for both marriage and homeownership together. Petitioner also provides caregiving

19    support to his fiancée's mother, who is currently in treatment for breast cancer. In addition,

20    Petitioner has close relationships with his two siblings, along with nieces and nephews, residing

21    in Las Vegas.

22    Petitioner has been in ICE custody since June 27, 2025.[4] On that same day, DHS initiated

23    removal proceedings against Petitioner by issuing and filing a Notice to Appear (NTA). The NTA

24    classified Petitioner as "an alien present in the U.S. who has not been admitted or paroled," rather

25    than an "arriving alien," and charged him as inadmissible and subject to removal under 8 U.S.C.

26    _____

27    [4] ICE initially encountered Petitioner following an arrest on June 6. All charges stemming
from this arrest were dismissed on August 17, 2025, by the Las Vegas Justice Court, and the case

28    was closed. ICE assumed custody of Mr. Arce-Cervera upon his release from the Clark County
Detention Center and transferred him to the Nevada Southern Detention Center.

§§ 1182(a)(6)(A)(i) and (a)(7)(A)(i)(I), to be held in detention pending a hearing before an immigration judge. He has been detained at Nevada Southern Detention Center since then.

On September 5, 2025, Petitioner requested a custody redetermination hearing (*i.e.*, bond hearing) before the Las Vegas Immigration Court. However, citing to Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), the IJ declined to consider the request on September 15, 2025, concluding they lacked jurisdiction over his bond proceeding under Hurtado. The IJ also declined to consider any evidence submitted by Petitioner, made no individualized assessment as to the necessity of Petitioner's ongoing detention, nor made any finding as to whether Petitioner poses a danger to the community or a flight risk.

On October 23, 2025, Petitioner appeared for his individual hearing before the Immigration Court. The Immigration Judge halted proceedings based on Petitioner's condition: he was confused, disoriented, and unable to meaningfully understand or answer questions. Petitioner's counsel has indicated that this was a result of Petitioner's significant mental health deterioration.

Both Petitioner and his family members are struggling due to his detention. Petitioner's future mother-in-law, in particular, has suffered in the absence of Petitioner's support during her battle with cancer. Since being detained, Petitioner has suffered from ongoing mental health distress, which has interfered with his ability to participate in proceedings such as his October 23, 2025, individual hearing before the Immigration Court. Despite being prescribed antidepressant medication to manage symptoms related to this distress, he has yet to receive this medication while in ICE custody.

## IV.    LEGAL STANDARDS

### A.  Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that

1  the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the

2  balance of equities tips in its favor, and (4) that the public interest favors an injunction." <u>Wells</u>

3  <u>Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.</u>, 758 F.3d 1069, 1071 (9th Cir. 2014), as amended

4  (Mar. 11, 2014) (citing <u>Winter</u>, 555 U.S. at 20).

5        The Ninth Circuit uses a sliding scale variant of the <u>Winter</u> standard: the "serious

6  questions" test. <u>All. for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1134 (9th Cir. 2011)

7  (affirming the continued viability of this doctrine post-<u>Winter</u>). According to this test, "serious

8  questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can

9  support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a

10  likelihood of irreparable injury, and that the injunction is in the public interest." <u>Id.</u> at 1135. Courts

11  in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one

12  element may offset a weaker showing of another." <u>Recycle for Change v. City of Oakland</u>, 856

13  F.3d 666, 669 (9th Cir. 2017).

14        **B.  § 2441 Petition for Writ of Habeas Corpus**

15        The Constitution guarantees that the writ of habeas corpus is "available to every individual

16  detained within the United States." <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 525 (2004) (citing U.S.

17  Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon

18  the legality of that custody, and . . . the traditional function of the writ is to secure release from

19  illegal custody." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be

20  granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or

21  federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means

22  of reviewing the legality of Executive detention, and it is in that context that its protections have

23  been strongest." <u>I.N.S. v. St. Cyr</u>, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas

24  jurisdiction includes challenges to immigration-related detention. <u>Zadvydas v. Davis</u>, 533 U.S.

25  678, 687 (2001); <u>see also</u> <u>Demore v. Kim</u>, 538 U.S. 510, 517 (2003).

26

27        **V.    DISCUSSION**

28        As a threshold matter, this Court converts Petitioner's Motion for Temporary Restraining

1    Order into one for a preliminary injunction. Respondents had notice, an opportunity to respond,

2    and ability to be heard. See Fed. R. Civ. P. 65. Because the standards for the two forms of relief

3    are the same, and the Court finds there is no benefit in additional briefing, issuance of a preliminary

4    injunction is warranted.

5        The Court further issues this Order without a hearing. In the Ninth Circuit, whether to hold

6    an evidentiary hearing or hear oral argument on a preliminary injunction is a matter of the district

7    court's discretion. See, e.g., Stanley v. Univ. of S. California, 13 F.3d 1313, 1326 (9th Cir. 1994)

8    (citations omitted) (refusal to hold a preliminary injunction hearing "is not an abuse of discretion

9    if the parties have a full opportunity to submit written testimony and to argue the matter."). A court

10   may rely solely on the briefing and affidavits of the parties where the urgent need for injunctive

11   relief so requires. Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d

12   547, 555 (9th Cir. 1986).

13       Here, the parties have not requested oral argument or an evidentiary hearing. See id. (noting

14   the failure to request an evidentiary hearing may constitute waiver). Additionally, the Court finds

15   there are no disputes of fact material to the request for preliminary relief that would necessitate an

16   evidentiary hearing. For those reasons, and considering the urgent need for injunctive relief where

17   Petitioner's liberty is at stake, the Court finds a preliminary injunction ruling without a hearing is

18   warranted in this case.

19       **A. Jurisdiction**[5]

20       The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his

21   detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. §§ 1252(a),

22   (b)(9), (g), and (e) do not apply, as discussed and held by the Court in granting habeas relief to

23   similarly situated petitioners, which the Court fully incorporates by reference and applies here. See

24   Vazquez, 2025 WL 2676082, at *7-9; Roman, 2025 WL 2710211, at *5.

25       **B. Administrative Exhaustion**

26   _____

27       [5] In similar matters, Respondents have asserted that the Court lacks jurisdiction over
     Petitioner's habeas challenge to the lawfulness of his detention. While not raised in this case, these
28   arguments are foreclosed by Ninth Circuit and Supreme Court precedent. See Vazquez, 2025 WL
     2676082, at *7-9; Roman, 2025 WL 2710211, at *5.

The Court fully incorporates by reference its prior finding that administrative exhaustion is excused as futile. See Herrera, 2025 WL2481792, at *7-8; Vazquez, 2025 WL 2676082, at *9-10.

### C. Preliminary Injunction

#### i. *Likelihood of Success or Serious Questions*

First, the Court finds Petitioner has satisfied the most important Winter factor: he is likely to succeed on the merits of his Petition for Writ of Habeas Corpus, because (1) § 1226(a), not § 1225(b)(2), applies to him, and therefore his detention without bond violates the INA and (2) Respondents' continued detention of Petitioner without a constitutionally adequate bond hearing violates Petitioner's procedural and substantive due process rights. See Matsumoto v. Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits is the most important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation).

The Court fully incorporates by reference its reasoning and holding from Vazquez. WL 2676082, at *11-22. Accordingly, the Court finds Petitioner is detained under § 1226(a).

#### ii. *Irreparable Harm*

The next factor requires a showing "that irreparable harm is likely, not just possible" in the absence of an injunction. Alliance for the Wild Rockies, 632 F.3d at 1131. Petitioner clearly faces irreparable harm in the absence of a judicial intervention. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows "inexorably" from this Court's conclusion that detention in the absence of a constitutionally adequate bond hearing—such that Petitioner would continue to be deprived of his physical liberty in violation of procedural and substantive due process in the absence of intervention—that Petitioner has carried his burden as to irreparable harm. Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). The Ninth Circuit has further recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In

1    the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id.

2            iii.   *Balance of Equities and Public Interest*

3            In Maldonado Vazquez, the Court's analysis regarding these factors rested in part on the

4    fact that Mr. Maldonado Vazquez had established at a bond hearing to the satisfaction of an IJ that

5    he was neither a flight risk nor danger to the community, such that the Government's interest in

6    his continued detention was minimal. See 2025 WL 2676082, at *22. Here the Court simply finds

7    that the Government's interest is adequately protected by the bond hearing process, and its ability

8    to present individualized evidence regarding its contention that prolonged detention of Petitioner

9    is warranted to an IJ. The Court simply enjoins Respondents from asserting Petitioner is subject to

10   mandatory detention under 8 U.S.C. § 1225(b)(2), pursuant to its obligation to interpret the

11   relevant statutory provisions of the INA "independent of influence from the political branches."

12   Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024).

13           In all other respects, the Court finds the Winter factors tip sharply in favor of Petitioner for

14   the same reasons set forth by this Court in Maldonado Vazquez. 2025 WL 2676082, at *22-23.

15       **D.  Scope of Relief**

16            Injunctive relief "should be no more burdensome to the defendant than necessary to

17   provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden,

18   993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual

19   basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). A

20   district court has equitable discretion in determining the appropriate remedy "as law and justice

21   require" for unlawful detention in a habeas petition pursuant to § 2254. See Brown v. Davenport,

22   596 U.S. 118, 127-28 (2022)

23            The Court finds that the specific harm Petitioner suffered—that he is being unlawfully

24   detained without a bond hearing—is remedied by granting his request for a bond hearing under 8

25   U.S.C. § 1226(a) within seven days and enjoining Defendants from denying bond on the basis that

26   he is detained under § 1225(b)(2). The Court sets a seven-day deadline because it finds Petitioner

27   has been unlawfully detained under § 1225 without a bond hearing, and the procedural due process

28   protections embedded in the right to a bond hearing, for two months. Given Petitioner's liberty

interest is at stake, the Court finds that if a bond hearing is not provided promptly, no later than October 31, 2025, within seven days of the Court's Order at the hearing granting the preliminary injunction, Petitioner's continued detention would violate his due process rights.

Therefore, the Court, in its equitable discretion in fashioning appropriate § 2254 habeas relief, further orders Respondents to immediately release Petitioner if a bond hearing is not provided by October 31, 2025, unless and until it is determined that he should be detained pursuant to the standard set forth in 8 U.S.C. § 1226. See, e.g., Lopez-Campos v. Raycraft, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (ordering immediate release or a bond hearing within seven days); Velasquez Salazar v. Dedos, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (ordering a bond hearing or release within seven days); Salazar v. Dedos et al, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729 (D.N.M. Sept. 17, 2025) (ordering similar relief); Kostak v. Trump, No. CV 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (same).

**E.    Bond**

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that providing Petitioner a bond hearing under 8 U.S.C. § 1226(a) will be costly. Therefore, the Court declines to set bond.

**VI.    CONCLUSION**

Based on the foregoing **IT IS HEREBY ORDERED** that Petitioner's Motion for a

Preliminary Injunction (ECF No. 5) is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the Court's Order granting the preliminary injunction from the bench, no later than **November 4, 2025**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **November 4, 202**5, Petitioner shall be released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a status report on the status of Petitioner's bond hearing by **November 5, 2025**. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**DATED:** October 28, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**